**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

_Edward Haywood Payne Jr._

_____

_____

*(In the space above enter the full name(s) of the plaintiff(s).)*

- against -

_Prevention Point Philadelphia,_
_Inc._
_Prevention Point_

_____

_____

_____

_____

_____

_____

_____

*(In the space above enter the full name(s) of the defendant(s). If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed in the above caption must be identical to those contained in Part I. Addresses should not be included here.)*

**COMPLAINT**

Jury Trial:  ☑ Yes   ☐ No

*(check one)*

**I.**  **Parties in this complaint:**

A.  List your name, address and telephone number.  If you are presently in custody, include your identification number and the name and address of your current place of confinement.  Do the same for any additional plaintiffs named.  Attach additional sheets of paper as necessary.

Plaintiff   Name   _Edward Haywood Payne Jr._
            Street Address   _7120 Ardleigh Street #J_
            County, City   _Philadelphia_
            State & Zip Code   _Pennsylvania   19119_
            Telephone Number   _(267) 992-1591_

*Rev. 10/2009*

B.      List all defendants.  You should state the full name of the defendants, even if that defendant is a government
        agency, an organization, a corporation, or an individual.  Include the address where each defendant can be
        served.  Make sure that the defendant(s) listed below are identical to those contained in the above caption.
        Attach additional sheets of paper as necessary.

Defendant No. 1        Name _Prevention Point Philadelphia, Inc._

                       Street Address _2913 Kensington Avenue_

                       County, City _Philadelphia_

                       State & Zip Code _Pennsylvania  19134_

Defendant No. 2        Name _Prevention Point Philadelphia, Inc._

                       Street Address _1900 N. 20th Street_

                       County, City _Philadelphia_

                       State & Zip Code _Pennsylvania  19121_

Defendant No. 3        Name _____

                       Street Address _____

                       County, City _____

                       State & Zip Code _____

Defendant No. 4        Name _____

                       Street Address _____

                       County, City _____

                       State & Zip Code _____


## II.    Basis for Jurisdiction:

Federal courts are courts of limited jurisdiction. Only two types of cases can be heard in federal court: cases
involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a
case involving the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C.  §
1332, a case in which a citizen of one state sues a citizen of another state and the amount in damages is more than
$75,000 is a diversity of citizenship case.

A.      What is the basis for federal court jurisdiction? *(check all that apply)*
        ☑ Federal Questions            ☐ Diversity of Citizenship

B.      If the basis for jurisdiction is Federal Question, what federal Constitutional, statutory or treaty right is at
        issue? _Title VII of  the Civil Rights Act of 1964,_
        _The Civil Rights Act of 1866 (Section 1981)_
        _____

C.      If the basis for jurisdiction is Diversity of Citizenship, what is the state of citizenship of each party?

Plaintiff(s) state(s) of citizenship _____

Defendant(s) state(s) of citizenship _____

## III.    Statement of Claim:

State as briefly as possible the facts of your case.  Describe how each of the defendants named in the caption of this complaint is involved in this action, along with the dates and locations of all relevant events.  You may wish to include further details such as the names of other persons involved in the events giving rise to your claims.  Do not cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Attach additional sheets of paper as necessary.

A.      Where did the events giving rise to your claim(s) occur?  *Prevention Point Philadelphia, Inc. 2913 Kensington Avenue Phila, PA 19134*

B.      What date and approximate time did the events giving rise to your claim(s) occur? _____
*See Attached Please, (PHRC) Pennslyvania Human Relations Commission, Amended Complaint. (page #2)*

C.      Facts:  *Please See PHRC "Underlying Facts" Page #2*

| What happened to you? |
*(blank lines)*

| Who did what? |
*Page #2 and 3*

| Was anyone else involved? |
*Page #2*

| Who else saw what happened? |
*Page #2 and 3*

**IV.    Injuries:**

If you sustained injuries related to the events alleged above, describe them and state what medical treatment, if any, you required and received. *No injuries (bodily) to report*

**V.    Relief:**

State what you want the Court to do for you and the amount of monetary compensation, if any, you are seeking, and the basis for such compensation.

I Edward Haywood Payne Jr (plaintiff) pray that the court grants me full monetary compensation in US dollars. The plaintiff (E. Payne) seeks including but not limited to: Economic Damages, Tort Damages ie Embarrassment, Humiliation, Stress and Anxiety as well as punititive Damages. The amount of the judgement prayed for $2,067,000.00 to/for the plaintiff, Edward Haywood Payne Jr.

**I declare under penalty of perjury that the foregoing is true and correct.**

Signed this _8_ day of _September_ , 20 _20_ .

Signature of Plaintiff _Edward Heywood Payne Jr._

Mailing Address _7120 Ardleigh Street_

_Apartment J_

_Philadelphia, PA 19119_

Telephone Number _(267) 992-1591_

Fax Number (*if you have one*) _____

E-mail Address _eve42431@temple.edu_

Note:   All plaintiffs named in the caption of the complaint must date and sign the complaint. Prisoners must also provide their inmate numbers, present place of confinement, and address.

For Prisoners:

I declare under penalty of perjury that on this _____ day of _____, 20_____, I am delivering this complaint to prison authorities to be mailed to the Clerk's Office of the United States District Court for the Eastern  District of Pennsylvania.

Signature of Plaintiff: _____

Inmate Number _____

Note:


This Designation Form must be <u>signed</u> before submission to the Clerk's Office *or a case number will not be assigned*.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Edward H. Payne Jr.,                                    **CIVIL ACTION NO.**


        Plaintiff,                                      **JURY TRAIL DEMAND**


    V.

Prevention Point Philadelphia Inc.,

And Prevention Point Health Center 5

        Defendant,


## **COMPLAINT**


I.  **INTRODUCTION**

1.  Plaintiff, Edward H Payne Jr (E. Payne), brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. $2000(e), et seq., as amended by the Civil Rights Act of 1991 (Title VII), 42 U.S.C. $ 1981 and the Civil Rights Act of 1866 (Section 1981) and Pennsylvania Human Relations Act, 43 Pa. C.S.A. $ 951 et seq. (PHRA). E Payne seeks economic damages, stress, anxiety, humiliation and embarrassment damages, punitive damages, interest, cost, injunctive and declaratory relief, negative tax consequence damages and attorneys' fees from the Defendants, Prevention Point Philadelphia and Prevention Point.

II.  **JURISDICTION**

COMMONWEALTH OF PENNSYLVANIA

GOVERNOR'S OFFICE

PENNSYLVANIA HUMAN RELATIONS COMMISSION

|  |  |  |
|---|---|---|
| Edward Haywood Payne Jr., | : | |
| Complainant | : | |
| | : | |
| | : | |
| v. | : PHRC Case No. 201801834 | |
| | : | |
| Prevention Point Philadelphia, Inc., | : EEOC No. 17F202060072 | |
| Respondent | : | |
| | : | |

## **COMPLAINT**

### **JURISDICTION**

1.  Jurisdiction is pursuant to the Pennsylvania Human Relations Act 43 P.S. §§ 951-963.

### **PARTIES**

2.  The Complainant herein is:

    Edward Haywood Payne Jr.
    7120 Ardleigh Street
    Apartment #J
    Philadelphia, PA  19119

3.  The Respondent herein is:

    Prevention Point Philadelphia, Inc.
    2913 Kensington Avenue
    Philadelphia, PA 19134

    Prevention Point Philadelphia, Inc.
    Health Center 5
    1900 N. 20th Street
    Philadelphia, PA  19121

*201801834*



Received

OCT - 4 2018

PA Human Relations Commission
Philadelphia Regional Office



**pennsylvania**
HUMAN RELATIONS COMMISSION

### PENNSYLVANIA HUMAN RELATIONS COMMISSION
### EMPLOYMENT DISCRIMINATION QUESTIONNAIRE

## 1. YOUR CONTACT INFORMATION

Name _EDWARD HAYWOOD PAYNE JR_

Address _7120 Ardleigh Street_ _# J_
_____ Street _____ Apt.

_Philadelphia_ _PA._ _19119_
City _____ State _____ Zip Code

Phone Number: (H) _____ (Cell) _(267) 992-1591_

Work: _____ E-mail address: _eve42431@temple.edu_

Name, address and phone number of a person, who does **NOT** live with you and will know how to contact you:

Name _Beverly G. Woods_ Phone Number _(215) 896-9161_

Address _406 N. 31st Street_ _Philadelphia, PA._ _19104_
_____ Street _____ City _____ State ___ Zip Code

## 2. AGAINST WHAT EMPLOYER DO YOU WANT TO FILE YOUR COMPLAINT?

Employer Name _Prevention Point Philadelphia (Internship)_
(Please use your employer's name as indicated on your paycheck or W-2 form)

Address in PA _2913 Kensington Ave._ _Philadelphia_ _PA_ _19134_
_____ Street _____ City _____ State ___ Zip Code

Phone Number _(215) 634-5272_ E-mail address: _____

Pennsylvania county where you were harmed: _Philadelphia County_

**NUMBER OF INDIVIDUALS WHO WORK FOR THE EMPLOYER:**

☐ Fewer than 4  ☐ 4 to 14  ☐ 15-20  ☒ 20+

**Type of Business** _Opioid Addiction Rehabilitation_

**Is the employer a federal agency?**  ☐ Yes  ☒ No

## 3. DESCRIBE HOW YOU WERE HARMED, AND WHEN, SO WE CAN DETERMINE IF WE CAN ASSIST YOU.   Check all that apply.

<u>Write the date(s) you were harmed beside the discriminatory event or action:</u>

☒ Discharge _July 26, 2018_  ☐ Lay-Off _____  ☐ Failure to Recall_____

☐ Forced Transfer_____  ☐ Denied Transfer_____  ☐ Demotion _____

☐ Forced Leave _____  ☐ Leave Denied _____  ☐ Unequal Wages _____

☐ Unequal Benefits _____  ☐ Failure to Hire _____  ☐ Failure to Promote _____

☐ Discipline (Suspension, Warning, etc.) _____  ☐ Harassment* _____
*Complete question #7 if you were harassed

☐ Forced to Quit _____
Not accommodated because of your: ☐ Disability _____  ☐ Religion _____

**OTHER**, please be specific: _____

## 4. DO YOU FEEL YOU WERE TREATED DIFFERENTLY (DISCRIMINATED AGAINST) BECAUSE OF ANY OF THE CHARACTERISTICS BELOW?

The commission can investigate your complaint only if you believe you were treated differently and harmed because of your race, color, religion, ancestry, age, sex, national origin, non-job related disability or the use of a guide or support animal for blindness, deafness or physical disability. For example, if you feel you were treated worse than someone else because of your race, please indicate race as the reason. If you feel you were treated differently because of your race and sex, please check both race and sex. **Only check reasons which explain why you were harmed.** Also, please identify your race, color, religion, national origin or ancestry, etc. **if** you were discriminated against based on those factors.

☐ Male  ☐ Female  ☐ Pregnant

☐ Age (40 or older only): Date of Birth _____
☒ Race _Retaliation(Complained of Racism_  ☐ Color _____

☐ Religion _____  ☐ Ancestry _____

☐ National Origin (country in which you were born) _____

☐ Association with a person of a different race than your own:
Your race _African American_  the other person's race _European American_

☐ Use of a guide or support animal _____

☐ Refusal to perform, participate in, or cooperate in abortion or sterilization services

☐ GED  ☐ Other _____

☐ I have a disability. (please complete #8)  ☐ The employer treats me as if I am disabled.

☐ I had a disability in the past. (please complete #8)

☐ I have a relationship or association with someone who has a disability. (please complete #8)

☐ **RETALIATION**
If you believe you were **harmed** because you complained about what you believed to be unlawful discrimination, because you **filed** a complaint about unlawful discrimination, or because you assisted someone else in complaining about discrimination, please complete the following information.

Date you filed a complaint with the PA Human Relations Commission _____

If you filed a complaint with another agency, list the agency's name and date of filing:

_____

Date you complained about discrimination to a manager *June 25, 2018*

Date you assisted someone in complaining about discrimination _____

## 5. WHEN WERE YOU HIRED OR WHEN DID YOU APPLY FOR A JOB WITH THE EMPLOYER?

Date you became an employee: *Intern : June 6, 2018*

Position for which you were hired: *Public Health Intern / Temple University*

What was your position at the time you were harmed? *Public Health Intern*

If you were seeking to be hired by an employer:

When did you apply?_____   When did you learn you were not hired? _____

## 6. STATE THE REASONS THE EMPLOYER GAVE YOU FOR ACTIONS THAT HARMED YOU.

*Due to my being "frustrated with the Organization of Prevention Point Philadelphia*

Who told you about the employer's reasoning for the action? Include his or her job title.

*Caite Wolak, Director Public Health : Temple University*

When were you told about the action taken against you? (Date or Dates)

*July 26, 2018*

If you were given no reason, please check here. ☐

Regarding how you were harmed, please identify a person or persons who were treated better than you. For example, as a **male employee** you were disciplined for a work violation, but a **female employee** who committed the same work violation was not disciplined.

Name of employee - First and Last (if known)

*Male Intern European American  Timothy Mulhern*

How is this person *different* from you? For example, what is his or her race, age, religion, etc.?

*RACE*

Please explain **exactly** how this person was treated better or differently than you. Include dates.

*June 12th, 13th, 15th, 18th, 20th, 22nd, 26th, 29th; July 6th, 11th, 13th, 16, 18th, 20th*

_____

If you cannot identify someone who was treated better or differently than you, you need to describe an incident, statement, *etc.* which can be investigated, and which directly relates to why you were treated differently than someone else.

_____

**7. IF YOU CHECKED ONE OF THE FOUR DISABILITY CATEGORIES IN #4, ANSWER THE FOLLOWING QUESTIONS.**

What is your disability? _Post Traumatic Stress Disorder_

How long have you had this disability and when did it start? _January, 2007_

Do you still have this disability? ☒ yes  ☐ no

If yes, how much longer do you expect to have the disability? _____

What major life activities do **you have great difficulty performing** because of your disability (Check all that apply.)

☐ Seeing  ☐ Hearing  ☐ Bending  ☐ Walking  ☐ Lifting  ☐ Stooping  ☐ Turning

☐ Climbing  ☐ Running  ☐ Talking  ☐ Standing for long periods

☐ Sitting for long periods  ☐ Caring for yourself  ☒ Thinking  ☒ Concentrating

☐ Relating to Others

Other Major Life Activities (**Be specific**) _____

If you have had a disability in the past, when did it start, and what date did it end? _____

If your employer treats you as if you are disabled:  What disability do they think or believe you have? _____

Who are the people that are treating you as disabled (names and positions or titles)?
_MARY VERDERAME, PCP: NPRT, DR ANDREW STONE Psychiatrist_

Why do you think that these people think or believe you have a disability?
_Diagnosis_

How did your employer learn about your disability? _Question on Application / File_

On what date did they learn about your disability? _June 5, 2018_

Which specific manager/official/agent) learned about your disability? (include title or position)
_Clayton Ruley, Director Street Side Program_

If you are related to someone who has a disability, what is your relationship to this person?
_N/A_

What is this person's disability? _____

How and on what date did the employer learn about this person's disability? _____

Did you ask for an accommodation or assistance in order to do your job?  ☐ yes  ☒ no

IF YES,

(1) To whom did you make your request? _____

(2) What date was the request made? _____

(3) Explain what the accommodation or assistance was that you requested, and why.

_____

_____

Did the employer provide your requested accommodation or assistance?  ☐ yes  ☒ no

If so, on what date? _____

Did the employer provide some other accommodation or assistance instead?  ☐ yes  ☒ no

If yes, please explain. _Thought that I could weather the_
_temporary storm, Internship._

Did the employer deny your request for an accommodation or assistance?  ☐ yes  ☒ no

if so, who denied your request?

_____

What date was the request denied? _____

What reason was given to you for the denial? _____

_____

_____

**8. IF YOU CHECKED THAT YOU WERE HARASSED UNDER #3, ANSWER THE FOLLOWING QUESTIONS AS COMPLETELY AS POSSIBLE.**

Name the person(s) who harassed you: _Rose Laurano, Benard Guy_

His or her position or job title _Syringe Exchange Program Associates_

When were you harassed?  Starting date _June 12, 2018_ Ending date _July 20, 2018_

Is the harassment still continuing?  ☐ yes  ☒ no

How often did the harassment occur?  As well as possible, please indicate **date, month and year** of each incident and how often the harassing actions occurred.

☐ One time only _____   ☐ Once a day _____

☐ Several times daily _____

☒ multiple times/week _June 12, 2018 — July 20, 2018_

☐ multiple times/month _____

Please provide two or three examples of the harassment you experienced.

_Persons listed consistently + insisted that I work thei thier stations handing out, and preparing works, as opposed to working my assigned stations, while they rested or went home._

Did you consider any of the above acts of harassment to be especially severe and/or offensive?

☒ Yes ☐ No   If so, please explain why. _They would consistently rest or leave the building, while I remained working thier stations without water or restroom breaks, they also laughed off and had other staff taunt me._

Did the harassment have a negative or harmful effect on your work environment, health or personal life?  If so, please explain:

_I paid my dues to the Army and the Dept. of Veterans Affairs paid tution, fees, and stipends for this course inorder for me to recieve a well rounded Harm Reduction organization experience_

Did you complain to anyone about the harassment?  ☒ Yes ☐ No

To whom did you complain?

_Clayton Ruley_                    _Street Side Program Director_
Name                                Position or job title

What date did you complain? _June 22, 2018 On or About_

Did the harassment stop after you complained about it?  ☐ Yes, ☒ No

If it ended, on what date did it stop? _____

After you complained, were any other actions taken against you? (for example – discipline, discharge, etc.)  ☒ Yes ☐ No

What were the actions? _Discharge_

On what dates did they occur? _July 26, 2018_

Who took the action against you? _Clayton Ruley_

Did this person know that you complained about the harassment?  ☒ Yes   ☐ No

Please identify someone who is different than you and who was treated better:

_Timothy Mulhern_                _Internist - II_
Name                                Position or job title

Reason they were treated better than you as discussed in #4 above: _RACE_

How were they treated better regarding the harassment?

*Allowed to rest, or leave the building totally, while still receiving credit for duty.*

**9. HAVE YOU BEEN INVOLVED IN ANY COURT ACTION REGARDING THIS MATTER? (COURT ACTION INITIATED BY YOU OR ANYONE ELSE.) IF SO, PLEASE SPECIFY THE COURT AND THE DATE FILED, TO THE BEST OF YOUR MEMORY.**

☐ Yes ☒ No   Court          City          County       State       Date filed

**10. IF YOU HAVE FILED THIS COMPLAINT WITH ANY OTHER LOCAL, STATE OR FEDERAL AGENCY, PLEASE ANSWER THE FOLLOWING:**

Name of the agency with which you filed _____

Date of filing _____ Inquiry or Complaint number _____

**11. IF YOU WILL HAVE AN ATTORNEY REPRESENTING YOU ON THIS MATTER, PLEASE HAVE YOUR ATTORNEY SEND US A LETTER THAT CONFIRMS THIS. (YOU DO NOT NEED AN ATTORNEY TO FILE A COMPLAINT.)**

**<u>YOU MUST SIGN AND DATE THIS FORM BEFORE RETURNING IT.</u>**

☒ *I hereby verify that the statements contained in this form are true and correct to the best of my knowledge, information and belief. I understand that false statements herein are made subject to the penalties of 18 PA.C.S. Section 4904, relating to unsworn falsification to authorities.*

**Signature** *Edward Haywood Payne Jr.*

**Date** September 27, 2018

**IF YOU HAVE OTHER INFORMATION YOU BELIEVE WE NEED TO KNOW TO HELP US UNDERSTAND YOUR COMPLAINT, PLEASE PROVIDE IT BELOW. FEEL FREE TO ATTACH ADDITIONAL PAGES TO DESCRIBE WHAT HAPPENED TO YOU AS COMPLETELY AS POSSIBLE.**

*Three weeks worth of pay was lost amounting to $1,543.67 USD.*

PA  Employment Discrimination Questionnaire, Rev. 8-13



**pennsylvania**
HUMAN RELATIONS COMMISSION

Edward Haywood Payne Jr. Vs. Prevention Point Philadelphia, Inc.

PHRC Case No. 201801834
EEOC Case No. 17F202060072

### Certificate of Service

Pursuant to the requirements of 1 Pa. Code § 33.31, I hereby certify that I have this day served the foregoing Amended Complaint by first class mail, postage prepaid, as follows:

Edward Haywood Payne Jr.
7120 Ardleigh Street
Apartment #J
Philadelphia, PA 19119

Human Resources Director or Manager
Prevention Point Philadelphia, Inc.
2913 Kensington Avenue
Philadelphia, PA 19134

Human Resources Director or Manager
Prevention Point Philadelphia, Inc.
Health Center 5
1900 N. 20th Street
Philadelphia, PA 19121

Latia D. Moore, Clerk II

11/22/2019

COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE
PENNSYLVANIA HUMAN RELATIONS COMMISSION

**Instructions:**

If you are represented by an attorney in the below mentioned matter, this form must be completed by your attorney and submitted to the PHRC.  We are unable to communicate with any outside party who has not been authorized to receive information about this complaint.

In the matter of: Edward Haywood Payne Jr. Vs. Prevention Point Philadelphia, Inc.
PHRC Case No. 201801834
EEOC Case No. 17F202060072

## **NOTICE OF APPEARANCE**

Please enter my appearance in the above captioned matter on behalf of:

**Edward Haywood Payne Jr.**

I am authorized to accept service on behalf of said participant in this matter.

**(Check One)**

[  ]   On the basis of this notice, I request a copy of each document hereafter issued to my client by the Pennsylvania Human Relations Commission in this matter.

[  ]   I am already receiving or have access to a copy of each document issued to my client by the Pennsylvania Human Relations Commission in this matter (alone, or in a consolidated proceeding) and do not, on the basis of this notice, require an additional copy.

_____
Signature

_____
Name (Printed)

_____
Address

_____
City, State & Zip Code

_____              _____
Telephone (Including area code)                    E-Mail Address

_____
Date

COMMONWEALTH OF PENNSYLVANIA

GOVERNOR'S OFFICE

PENNSYLVANIA HUMAN RELATIONS COMMISSION

Received

OCT 2 2019

PA Human Relations Commission
Philadelphia Regional Office

|  |  |  |
|---|---|---|
| Edward Haywood Payne Jr., | : | |
| Complainant | : | |
| | : | |
| | : | |
| v. | : | PHRC Case No. 201801834 |
| | : | |
| Prevention Point Philadelphia, Inc., | : | EEOC No. 17F202060072 |
| Respondent | : | |
| | : | |

## AMENDED COMPLAINT

### JURISDICTION

1.   Jurisdiction is pursuant to the Pennsylvania Human Relations Act 43 P.S. §§ 951-963.

### PARTIES

2.   The Complainant herein is:

Edward Haywood Payne Jr.
7120 Ardleigh Street
Apartment #J
Philadelphia, PA  19119

3.   The Respondent herein is:

Prevention Point Philadelphia, Inc.
2913 Kensington Avenue
Philadelphia, PA 19134

Prevention Point Philadelphia, Inc.
Health Center 5
1900 N. 20th Street
Philadelphia, PA  19121

## UNDERLYING FACTS

4.   The Respondent, on information and belief, employed four or more persons when the unlawful conduct alleged in this complaint occurred.

5.   I am a student at Temple University's College of Public Health.

6.   My course requirements for a Bachelor's degree in Public Health, includes two credit-earning internships.

7.   In or about April 2018, I applied for a paid internship with Respondent. Shortly thereafter I was accepted by Respondent as an intern.

8.   In or about early May 2018, Michelle Scarpulla, one of my Temple Public Health instructors, and I met with Respondent's Streetside Health Project Director, Clayton Ruley to discuss my internship with Respondent.

9.   During our meeting, Mr. Ruley advised me that he would supervise my internship and it would involve me shadowing him each week in the following areas of Respondent's operations: Outreach/3 days; Streetside/1 day.; Cafeteria/1 day.

10.   On or about June 6, 2018, I began my internship with Respondent.

11.   On at least twelve occasions beginning on or about June 12, 2018, Respondent's non-supervisory employee, Rose Laurano, Caucasian, required me to leave my assignments in Outreach, Streetside or the Cafeteria to complete tasks which had been assigned to Ms. Laurano and another intern from Temple, Tim Mulhern, Caucasian.

12.   Both Ms. Laurano and Tim Mulhern were assigned to Respondent's Needle Exchange Program. Tasks associated with this program included, putting packets together for needle exchange, and unloading the supply truck and putting away the supplies.

13.   On each occasion that Ms. Laurano called me away from my assignments, she would tell me that it was because they were busy in the Needle Exchange Program and needed my help. However, when I came to help, Ms. Laurano and Tim Mulhern would often retreat to the office where they relaxed, socialized and surfed the web or left Respondent's building while I completed their assignments.

## Count 1

| Discharge | Retaliation - Discrimination |

14.   Paragraphs 1 through 13 are incorporated herein by reference as though set forth in full.

15.   Beginning in about June 2018, I complained to my supervisor, Clayton Ruley (African American) that on various occasions, Rose Laurano, required me to leave my assignments in order to complete their assignments while she and Tim Mulhern relaxed, socialized and surfed the web or left Respondent's building.

16.   I told Mr. Ruley that I believed my treatment by Ms. Laurano was due to my race, African American.

17.   Mr. Ruley told me that he did not believe my treatment was due to my race, and that he would speak with Ms. Laurano.

18.   Despite my complaints to Mr. Ruley, Ms. Laurano continued to require me to leave my assignments to perform work assigned to her and Tim Mulhern.

19.   Beginning in or about mid to late June 2018, I complained to Charles Thomas (African American), Ms. Laurano's supervisor and Supervisor of Respondent's Exchange Program.

20.   I explained to Mr. Thomas that Ms. Laurano was requiring me to complete work assigned to her and Tim Mulhern while they socialized or otherwise relaxed.

21.   Mr. Thomas advised me that he would speak with Ms. Laurano.

22.   Because Ms. Laurano continued to have me complete her work assignments in Needle Exchange, in about mid-July 2018, I spoke to Mr. Thomas again. I informed him that I thought my treatment was because I am African American.

23.   During that conversation, Mr. Thomas told me that earlier in the year he had attempted to terminate Ms. Laurano but Respondent's Executive Director, Jose Benitez, race Hispanic, prevented him from doing so.

24.   On or about July 26, 2018, Caite Wolak, race Caucasian, Director of Temple University's Public Health Program and Undergraduate Fieldwork Coordinator, informed me via email that Respondent terminated me from its Internship Program.

25.   Respondent stated reason for my termination was because of the frustration I was experiencing with Respondent.

3

26. I acknowledge that I was frustrated, but my frustration was because of Respondent's continued refusal to address my complaints about discrimination due to my race.

27. Respondent's actions were retaliatory because after I made multiple complaints about racial discrimination, rather than address the reasons for my complaints, Respondent chose to terminate my internship.

28. Based upon the foregoing, I allege that the respondent violated Section 5(d) of the Pennsylvania Human Relations Act 43 P.S. 951-963.

29. The Complainant prays that the Respondent be required to provide all appropriate remedies under § 9 of the Pennsylvania Human Relations Act.

## VERIFICATION

I hereby verify that the statements contained in this complaint are true and correct to the best of my knowledge, information, and belief.  I understand that false statements herein are made subject to the penalties of 18 PA.C.S. § 4904, relating to unsworn falsification to authorities.

September 30, 2019
_____
(Date Signed)

_____
Edward Payne

COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE
PENNSYLANIA HUMAN RELATIONS COMMISSION

| | | |
|---|---|---|
| Edward Haywood Payne, Jr., | : | PHRC Case No. 201801834 |
| Complainant, | : | EEOC Case No. 17F-2020-60072 |
| v. | : | |
| Prevention Point Philadelphia, Inc., | : | |
| Respondent. | : | |

### Answer to PHRC Amended Complaint

*AND NOW*, comes Respondent, Prevention Point Philadelphia, Inc. (hereinafter "PPP" or "Respondent"), by and through its undersigned counsel, and responds to the allegations of Complainant's PHRC Amended Complaint as follows:

### Jurisdiction

1.      Paragraph 1 of the PHRC Amended Complaint constitutes a conclusion of law to which no responsive pleading is required. To the extent that Paragraph 1 of the PHRC Amended Complaint does contain an averment of fact, the same is denied and strict proof thereof is demanded.

### Parties

2.      Admitted.

3.      Admitted.

### Factual Allegations

4.      Admitted in part, denied in part. It is admitted that PPP employs four (4) or more persons. It is specifically denied that PPP ever engaged in any unlawful conduct.

5.    Admitted.

6.    After a reasonable investigation, Respondent is without sufficient information to form a belief as to the truth of the matter asserted in Paragraph 6 of the PHRC Amended Complaint. As such, the averments are denied and strict proof thereof is demanded.

7.    Admitted.

8.    Admitted.

9.    Denied. Mr. Ruley never gave Mr. Payne a specific schedule. Instead, Mr. Ruley advised that, as with all interns, Mr. Payne should expect to work in numerous areas of PPP's operations, including Case Management, Syringe Exchange Services, Drop-In Centers, Mail Services, Meal Services, Overdose Reversal, and Distribution Services. Mr. Ruley also explained that Mr. Payne would be expected to take instruction from numerous employees of PPP.

10.    Admitted.

11.    Denied.

12.    Denied as stated. Ms. Laurano was employed by PPP as an Associates in the Syringe Exchange Program ("SEP"). Mr. Mulhern was a former volunteer who applied for an internship with PPP and specifically requested that he be assigned to SEP.

13.    Denied.

## Count I

14.    All of the responses contained in the foregoing Paragraphs of this Answer are incorporated by reference herein as if the same were set forth at length.

15.    Admitted in part, denied in part. It is admitted that Mr. Payne complained to Mr. Ruley that he perceived that Ms. Laurano was giving preferential treatment to Mr. Mulhern. In

particular, Mr. Payne complained that he did not like to have to complete the emergency packets. Mr. Payne did not provide any basis for a claim that his race played any role in his perception of how he was being utilized by PPP. It is specifically denied that Ms. Laurano or Mr. Mulhern ever relaxed, socialized, or surfed the web while they were working.

16.     Admitted in part, denied in part. It is admitted that Mr. Payne reported that he believed that he was being discriminated against on the basis of his race. It is specifically denied that Mr. Payne ever provided any basis for a claim that his race played any role in his perception of how he was being utilized by PPP.

17.     Admitted. By way of further response, Mr. Ruley also explained to Mr. Payne that he did not see any basis to suspect that Mr. Payne's race played any role in any decision that was made.

18.     Denied. Ms. Laurano never assigned Mr. Payne to perform her job tasks. Instead, Ms. Laurano worked with Mr. Payne, as an intern, to help him learn all aspects of SEP.

19.     Admitted.

20.     Admitted in part, denied in part. It is admitted that Mr. Payne complained about the assignments he was given. It is specifically denied that Ms. Laurano ever assigned Mr. Payne to complete her job tasks so that she could socialize with Mr. Mulhern.

21.     Admitted.

22.     Admitted in part, denied in part. It is admitted that Mr. Payne complained about the assignments he was given. It is specifically denied that Ms. Laurano ever assigned Mr. Payne to complete her job tasks so that she could socialize with Mr. Mulhern.

23.     Denied. Mr. Thomas never made this statement. To the contrary, since June 2018, PPP promoted Ms. Laurano to the position of Homeless Outreach Coordinator.

- 3 -

24.   Admitted upon information and belief.

25.   Denied.  Mr. Payne was removed from the internship program because of several troublesome written statements he made, which gave PPP reason to believe that Mr. Payne posed a threat of violence to himself or others.

26.   After a reasonable investigation, Respondent is without sufficient information to form a belief as to the truth of the matter asserted in Paragraph 26 of the PHRC Amended Complaint. As such, the averments are denied and strict proof thereof is demanded.  It is specifically denied that PPP ever discriminated against Complainant on the basis of his race.

27.   Paragraph 27 of the PHRC Amended Complaint constitutes a conclusion of law to which no responsive pleading is required.  To the extent that Paragraph 27 of the PHRC Amended Complaint does contain an averment of fact, the same is denied and strict proof thereof is demanded.  It is specifically denied that the decision to remove Complainant as an intern was related, in any way, to his race or for retaliatory reasons.

28.   Paragraph 28 of the PHRC Amended Complaint constitutes a conclusion of law to which no responsive pleading is required.  To the extent that Paragraph 28 of the PHRC Amended Complaint does contain an averment of fact, the same is denied and strict proof thereof is demanded.

29.   Paragraph 29 of the PHRC Amended Complaint constitutes a conclusion of law to which no responsive pleading is required.  To the extent that Paragraph 29 of the PHRC Amended Complaint does contain an averment of fact, the same is denied and strict proof thereof is demanded.

*WHEREFORE*, Respondent respectfully requests that the Commission dismiss the Charge of Discrimination with a finding of no probable cause.

Respectfully submitted,

**DEASEY, MAHONEY & VALENTINI, LTD.**

By: _____

Rufus A. Jennings, Esquire

Date: 1/27/2020

## Certificate of Service

I, Rufus A. Jennings, Esquire, hereby certify that on the date set forth below, I did cause a true and correct copy of the foregoing Answer to PHRC Amended Complaint to be served on the following individuals via first-class mail:

Edward Haywood Payne, Jr.
7120 Ardleigh Street
Apartment #J
Philadelphia, PA 19119

Rufus A. Jennings, Esquire

Date: 7/27/2020

- 6 -



FRANCIS J DEASEY
HARRY G. MAHONEY
GERALD J VALENTINI†
HENRI MARCEL‡
JOHN P MORGENSTERN‡
ANDREW B. ADAIR
MATTHEW J. JUNK‡
ATHENA O. PAPPAS‡
RUFUS A. JENNINGS
BRIAN C. LEGROW◊
MICHAEL P. RAUSCH‡

LAUREN M. STEINS†
LEANNA B. RUOTANEN‡
ARMAND C. PACE, JR.
STEVEN K. DILIBERTO
BRIAN M. PÉREZ†‡
CHRISTINE D. STEERE‡
CHRYSTALE B. HEWITT†
FRANK F. MENAQUALE, JR.†
MICHAEL A. KINRY
EDWARD J. HENRY‡
MATTHEW R. MELLON
DANIEL S. GRADWOHL. ‡

† ALSO MEMBER NJ BAR
‡ ALSO MEMBER CA BAR
AI SO MEMBER GA BAR
◊ ALSO MEMBER DE BAR
φ AI SO MEMBER TX BAR

OF COUNSEL

FRANK C BENDER
WILLIAM A RUBERT†
GEORGE R ZACHARKOW§
WARD A RIVERS†
CHRISTOPHER C NEGRETE
PENELOPE B O'CONNELL◊

NEW JERSEY OFFICE
923 HADDONFIELD ROAD, SUITE 300
CHERRY HILL, NJ 08002
856-429-6931
FACSIMILE 856-429-6562

MEDIA OFFICE
SUITE 101
103 CHESLEY DRIVE
MEDIA, PA 19063
610-892-2712
FACSIMILE 215-587-9456

SUITE 3400
1601 MARKET STREET
PHILADELPHIA, PA 19103-2301
215-587-9400
FACSIMILE: 215-587-9456
WWW.DMVLAWFIRM.COM

DIRECT EMAIL: RJENNINGS@DMVLAWFIRM.COM
VOICE-MAIL EXTENSION #1178

January 27, 2020

*Via hand-delivery*

Latifah Riley, Investigator
PHILADELPHIA HUMAN RELATIONS COMMISSION
Philadelphia Regional Office
110 North 8th Street, Suite 501
Philadelphia, PA 19107

  **Re:** ***Edward Haywood Payne v. Prevention Point Philadelphia, Inc.***
     **PHRC Case No. 201801834**
     <u>**Our File No. 543.27571**</u>

Dear Ms. Riley:

  Please accept this letter as the Position Statement of Respondent, Prevention Point Philadelphia, Inc. (hereinafter "PPP"), in response to Complainant, Edward Haywood Payne, Jr.'s Charge of Discrimination.[1]

---

[1] The facts and positions set forth herein are based upon the undersigned's understanding and preliminary investigation at the time of this Position Statement. By submitting this Position Statement, PPP in no way waives its right to present new or additional facts or arguments based upon subsequently acquired information or evidence. Further, this Position Statement, although believed to be true and correct in all respects, has been prepared based on preliminary interviews of those who appear to have the most knowledge, prior to conducting full interviews of all persons with information. It does not constitute an affidavit and is provided in an attempt to affect an amicable resolution of Mr. Payne's claims. Accordingly, this Position Statement is not intended to be used as evidence of any kind in any commission or Court proceeding in connection with the above-referenced charge, and is inadmissible in court pursuant to FED. R. EVID. 408 and Pa. R. Evid. 408.

Latifah Riley, Investigator
PHILADELPHIA HUMAN RELATIONS COMMISSION
*Payne v. Prevention Point Philadelphia, Inc.*
PHRC Case No. 201801834
**January 27, 2020**
Page 2

I.    Factual Background

    *a.*    ***Prevention Point Philadelphia, Inc.***

        PPP was founded in 1993 after Mayor Ed Rendell passed an Executive Order overriding state laws prohibiting syringe exchange programs. Today, PPP serves as the largest needle-exchange program in the United States. PPP also provides food and medical services to the homeless population in Philadelphia's Kensington neighborhood; two (2) drop-in centers serving 250 a day; a Police Diversion Program to keep individuals out of the criminal justice system; and two (2) facilities to provide emergency housing to up to eighty (80) individuals. In total, PPP serves 15,000 discrete individuals a year and employs approximately 100 people.

        PPP maintains and enforces a strict anti-harassment and anti-discrimination policy. Pursuant to that policy:

> Prevention Point Philadelphia is an equal opportunity employer and makes employment decisions on the basis of merit. We want to have the best available people in every job and value the diversity and inclusion of all people. Therefore, PPP does not discriminate and does not permit its employees to discriminate against other employees or applicants based on race, color, religion, sex, sexual orientation, gender identity or expression, pregnancy, marital status, national origin, citizenship, recovery status, previous substance use, veteran status, age, disability as protected by state or local law, medical condition or any other consideration made unlawful by applicable law. Equal opportunity is extended to all persons in all aspects of the employer-employee relationship, including retirement, hiring, training, promotion, transfer, discipline, layoff, recall and termination.

* * *

> PPP maintains a "zero-tolerance" policy with respect to employee harassment of any kind. Harassment in employment, including sexual, racial and ethnic harassment, as well as any other harassment forbidden by law, is strictly prohibited by PPP. Employees who violate the policy are subject to discipline, including possible termination.

> Racial, ethnic and other forms of prohibited harassment include, but are not limited to:

Latifah Riley, Investigator
PHILADELPHIA HUMAN RELATIONS COMMISSION
*Payne v. Prevention Point Philadelphia, Inc.*
PHRC Case No. 201801834
**January 27, 2020**
Page 3

(1) Visual conduct, including displaying of derogatory objects in pictures, cartoons, or posters;

(2) Verbal conduct, including making or using derogatory comments, epithets, slurs and jokes.

\* \* \*

PPP will take all reasonable steps to prevent harassment from occurring and will take immediate and appropriate action when the organization knows that unlawful harassment has occurred. [2]

PPP also prohibits retaliation against anyone who makes a good faith report of discrimination or harassment:

Each member of management is responsible for creating an atmosphere free of discrimination and harassment, sexual or otherwise. Further, employees are responsible for respecting the rights of their coworkers.

If you experience any job-related harassment in any way or believe that you have been treated in an unlawful, discriminatory manner, promptly report the incident to your supervisor/coordinator or the HR Manager. This policy applies to all incidents of alleged discrimination or harassment, including those occurring off-premises or off-hours, where the alleged offender is a supervisor, coworker, or even a non-employee with whom you are involved, directly or indirectly, in a business or potential business relationship arising from or relating to your work for PPP.

Should the alleged discrimination or harassment occur at a time other than your normal business hours, your complaint should be made as early as practicable on the first business day following the alleged incident.

PPP takes complaints of discrimination and harassment very seriously. Thus, there is no need to follow any formal chain of command when making a complaint or when discussing or expressing any issue of concern regarding alleged discrimination

---

[2] Equal Employment Opportunity/Harassment Policy, in Employee Manual at pg. 5, attached hereto as Exhibit "A".

Latifah Riley, Investigator
PHILADELPHIA HUMAN RELATIONS COMMISSION
*Payne v. Prevention Point Philadelphia, Inc.*
PHRC Case No. 201801834
**January 27, 2020**
**Page 4**

> or harassment, and you may bypass anyone in your direct chain of command and file your complaint or discuss or express any issue of concern with the HR Manager. The HR Manager, or her/his designee, will undertake a prompt investigation of any complaints. All complaints will be kept confidential to the maximum extent possible. All employees have a duty to cooperate fully in connection with any such investigation.

> If the individual against whom the complaint is going to be filed is the Executive Director, then the complaint should be directed to the President of the Board of Directors of PPP. The President is aware of this policy and realizes that it is her/his duty to protect the employees of PPP, thereby welcoming direct contact in such circumstances.

> If PPP determines that an employee has engaged in discriminatory or harassing behavior toward another PPP employee, appropriate disciplinary action will be taken against the offending employee, up to and including termination of employment.

> PPP prohibits any form of retaliation against any employee for filing a bona fide complaint under this policy or for assisting in a complaint investigation. If, after investigating any complaint of harassment or unlawful discrimination, PPP determines that the complaint is not bona fide and was not made in good faith or that an employee has provided false information regarding the complaint, disciplinary action may be taken against the individual who filed the complaint or who gave the false information.[3]

PPP accepts interns from several local colleges and universities, including Temple University. The internship program falls under the supervision of Clayton Ruley, Director of Community Engagement and Volunteer Services (African-American). PPP usually has between twelve and twenty-four (12-24) interns at any time during the year. Interns are exposed to all aspects of PPP's operations, including Case Management, Syringe Exchange Services, Drop-In Centers, Mail Services, Meal Services, Overdose Reversal, and Distribution Services. Interns from Temple University generally are enrolled in the College of Public Health or the School of Social Work. For students from the College of Public Health, Mr. Ruley's primary contacts are Caite Wolak and Michelle Scarpulla.

---

[3] Complaint Procedure Policy, in Employee Manual at pg. 6, attached hereto as Exhibit "A".

Latifah Riley, Investigator
PHILADELPHIA HUMAN RELATIONS COMMISSION
*Payne v. Prevention Point Philadelphia, Inc.*
PHRC Case No. 201801834
January 27, 2020
Page 5

Edward Haywood Payne, Jr., is a student at the Temple University College of Public Health. In 2018, Mr. Payne applied for an unpaid internship with PPP. He met with Mr. Ruley, and initially indicated that he was not interested in pursuing the internship. Shortly thereafter, Mr. Payne apparently changed his mind and asked to set up an interview. Mr. Ruley interviewed Mr. Payne and agreed to accept him into the internship program.

Mr. Ruley also interviewed and accepted Tim Mulhern as an intern. Unlike Mr. Payne, Mr. Mulhern already was associated with PPP. He had started with the organization as a volunteer several months earlier, and was familiar with all of the areas of PPP's operations. However, when he arrived as an intern, Mr. Mulhern was clear that he wanted to dedicate his time to the Syringe Exchange Program ("SEP").

The SEP falls under the supervision of Charles Thomas (African-American), SEP Coordinator. In the summer of 2018, Bernard Guy (African-American) and Rose Laurano (Caucasian) worked as SEP Coordinators. Mr. Guy has since been promoted to the position of Supply Manager, and Ms. Laurano is now the Homeless Outreach Coordinator.

Contrary to the allegations of Mr. Payne's PHRC Amended Complaint, he was not given a specific schedule for "shadowing" Mr. Ruley. Instead, he was told that he would be working in all aspects of the organization, and that he would be taking direction from numerous people.

In late June 2018, Mr. Payne did come to Mr. Ruley and complain that he felt that he was being discriminated against on the basis of his race. Mr. Payne appeared to be uncomfortable that he was expected to take direction from anyone other than Mr. Ruley, and stated that he did not want to assemble packets for the SEP. Mr. Ruley listened to Mr. Payne and tried to explain to him that he was still new to the program, that everyone was expected to assemble SEP packets, and that he did not believe that there was any improper treatment due to Mr. Payne's race.

On or about July 16, 2018, Mr. Ruley was contacted by Ms. Wolak regarding a journal post made by Mr. Payne. In that post, Mr. Payne wrote:

> This week has been offensive, but in more subtle and creative ways than in the past, so yes it was a dickhead week. Monday Clayton was off, so I voluntarily went to the SEP desk to handout "ten packs", mind you the Rasion de Etre, reason for existence upon which this organization was founded. Within not even a half an hour both SEP associates were gine, shortly after Tim vanished. Within ninety minutes, the SEP section in the basement was a ghost town. By Wednesday I done with SEP forever, because Rose approached me and ask me if I was comfortable explaining SEP procedures to a new intern. When I stated I was not a gave a

Latifah Riley, Investigator
PHILADELPHIA HUMAN RELATIONS COMMISSION
*Payne v. Prevention Point Philadelphia, Inc.*
PHRC Case No. 201801834
**January 27, 2020**
Page 6

reason along the lines of double standard confusion, Rose began to explain the procedures to the intern. Initially it was difficult to hear, but when she went off point and explained to the new intern why Tim was the best inter Rose made sure I heard that. Does it mean much in general, no but I nor the ask her who was the best, and the kmicker is on Friday, the day I left early, a volunteer or part time worker out front in a common break area was chanting how Tim is the best. Shortly after this the "All Star" Tim poked his head out the and told me that the SEP needed my help, of course I never went.

Okay... so, as mama said people are going to talk about you when you are dead. I say fine, but don't waste me time and don't lie on me, especially so you can be paid for a job as I perform it and never get a thank you. I can't wait to hear this explanation so that I can ignore it. I am there working and did not get a thank you, but Tim is the best when he is no where to be found!!! When my lawsuits are filed for harassment and discrimination in employment we will find out what the Federal Court System thinks, mark my muther-f***king word!!!! When I never heard a thank you, which I here from everyone else, even my supervisor Clayton Ruley. I did not hear Tim is the best. I heard, **little ni**er boy you best stay in your place.** I don't give a f**k what one says, I am never helping the SEP again. After all I should strive to be the best and that entails **not** being where you are supposed to be, and **not** doing what you are supposed to be doing! We shall experiment with this quite often for the next five weeks or so! The best, shit Tim wouldn't even be the best kindergartener, and neither would Rose or slim aka Bernard.[4]

Mr. Ruley spoke with Ms. Wolak and Ms. Scarpulla. They agreed that Mr. Payne would remain at PPP, and that they would work to have him finish the semester. Ms. Wolak and Ms. Scarpulla also met with Mr. Payne to discuss his concerns.

Several days later, Mr. Payne presented a handwritten note to Executive Director Jose Benitez's Executive Assistant. That note contained thinly veiled threats of violence against PPP. Concerned that Mr. Payne posed a safety risk to himself and others, Mr. Ruley contacted Ms. Wolak and Ms. Scarpulla, and it was agreed that Mr. Payne would be removed from his internship at PPP. As Mr. Payne was an intern through Temple University, he was not replaced.

---

[4] Journal Entry, attached hereto as Exhibit "B".

Latifah Riley, Investigator
PHILADELPHIA HUMAN RELATIONS COMMISSION
*Payne v. Prevention Point Philadelphia, Inc.*
PHRC Case No. 201801834
January 27, 2020
Page 7


## II.   Legal Analysis

Mr. Payne's PHRC Amended Complaint alleges claims for race discrimination/harassment and retaliation under Title VII of the Civil Rights Act and the Pennsylvania Human Relations Act ("PHRA"). These claims are subject to an identical analysis. *See e.g. Lula v. Network Appliance, Inc.*, 245 Fed. Appx. 149, 151 fn.2 (3rd Cir. May 16, 2007).

### *a.   Race Discrimination*

Pursuant to Title VII, "It shall be an unlawful employment practice for an employer ... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). Under the PHRA:

> It shall be an unlawful discriminatory practice ... [f]or any employer because of the race, ... to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required.

43 P.S. § 955(a).

> Under Title VII, to make a prima facie showing of race discrimination, a plaintiff must demonstrate that: (1) he or she belongs to a protected class; (2) he or she was qualified for the position; (3) he or she was subject to an adverse employment action despite being qualified; and (4) the adverse employment action occurred under circumstances that give rise to an inference of discrimination.

*Coleman v. Pennsylvania State Police*, 561 Fed. Appx. 138, 146 (3rd Cir. 2014). There is no basis here for Mr. Payne to assert a claim for race discrimination.

Initially, Mr. Payne is not an "employee" under Title VII or the PHRA. "To determine whether a person is an employee for purposes of the PHRA, Pennsylvania courts have looked to federal court decisions interpreting Title VII of the Civil Rights Act of 1964." *Lopez v. Citywide Counseling Services, Inc.*, 2016 WL 5420685, *8 (Pa. Super. Ct. September 27, 2016). Looking at those federal court decisions, "it has consistently been held under Title VII that an unpaid intern is not an employee." *Evans v. Washington Center for Internships and Academic*

**Latifah Riley, Investigator**
PHILADELPHIA HUMAN RELATIONS COMMISSION
*Payne v. Prevention Point Philadelphia, Inc.*
**PHRC Case No. 201801834**
**January 27, 2020**
**Page 8**

*Seminars*, 587 F. Supp. 2d 148, 151 (D. D.C. 2008).  In *O'Connor v. Davis*, 126 F.3d 112 (2nd Cir. 1997), the Second Circuit held that an individual who volunteered at a hospital as part of her education program was not an "employee" under Title VII.  The court held:

> Where no financial benefit is obtained by the purported employee from the employer, no "plausible" employment relationship of any sort can be said to exist because although compensation by the putative employer to the putative employee in exchange for his services is not a sufficient condition, it is an essential condition to the existence of an employer-employee relationship.

*Id.* at 115-16, *citing Graves v. Women's Professional Rodeo Association*, 907 F. 2d 71, 74 (8th Cir. 1990) (*internal quotation marks omitted*).

In this case, there is no dispute that Mr. Payne was an unpaid intern.  While he may have received college credit for the time he spent at PPP, he was not provided a salary, benefits, or any other form of compensation associated with employment.  Under such circumstances, federal law makes it clear that Mr. Payne was not an "employee" for purposes of Title VII.  As Pennsylvania adopts the rulings of the federal courts in interpreting the PHRA, it is clear that Mr. Payne's claim also must fail under state law.

Even if Mr. Payne were an "employee" for purposes for the PHRA or Title VII, he has not set forth any basis to suggest that his race played any role in the decision to remove him from the unpaid internship.  That decision was made jointly by Mr. Ruley, an African-American man, and Mr. Payne's faculty advisors at Temple University.  Ms. Laurano, whom Mr. Payne accuses of bearing the racial animus, played no role in the decision.  Mr. Payne was not replaced in his position, and he cannot identify any similarly-situated Caucasian intern who was not discharged under similar circumstances.  As such, any claim for race discrimination must fail.

Even if Mr. Payne could show some basis to suggest that his race played any role in the decision to remove him from the unpaid internship, PPP had a legitimate reason for its decision under the burden-shifting paradigm of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

> Briefly summarized, the McDonnell Douglas analysis proceeds in three stages.  First, the plaintiff must establish a prima facie case of discrimination.  If the plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection.  Finally, should the defendant carry this burden, the plaintiff then must have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were

Latifah Riley, Investigator
PHILADELPHIA HUMAN RELATIONS COMMISSION
*Payne v. Prevention Point Philadelphia, Inc.*
PHRC Case No. 201801834
January 27, 2020
Page 9

> not its true reasons, but were a pretext for discrimination. While
> the burden of production may shift, the ultimate burden of
> persuading the trier of fact that the defendant intentionally
> discriminated against the plaintiff remains at all times with the
> plaintiff. Our experience is that most cases turn on the third stage,
> i.e., can the plaintiff establish pretext.

*Jones v. School District of Philadelphia*, 198 F.3d 403, 410 (3rd Cir. 1999) (*internal citations and quotations omitted*).

Here, Mr. Payne openly announced his refusal to work in the SEP. He acknowledges that this program is the *raison d'etre* of PPP. It is where the organization started, and remains a primary focus of the current operations. Mr. Payne's profane announcement that he would no longer assist in this department made his continued participation in the internship impossible. This refusal was followed up with the more serious concern that, based on his handwritten note, Mr. Payne posed a threat to himself or others at PPP. "Violence or a threat of violence against co-employees constitute legitimate reasons for terminating an employee." *Dose v. Buena Vista University*, 229 F. Supp. 2d 910, 926 (N.D. Iowa 2002). Under these circumstances, PPP had no choice but to have Mr. Payne removed from the program.

**b.    *Racial Harassment***

To the extent that Mr. Payne also contends that he was subjected to a hostile work environment based on his race, such claim also fails. To set forth such a claim, Mr. Payne must establish:

> 1) the employee suffered intentional discrimination because of
> his/her [race], 2) the discrimination was severe or pervasive, 3) the
> discrimination detrimentally affected the plaintiff, 4) the
> discrimination would detrimentally affect a reasonable person in
> like circumstances, and 5) the existence of *respondeat superior*
> liability.

*Mandel v. M & Q Packaging Corporation*, 706 F.3d 157, 167 (3rd Cir. 2013). "To determine whether an environment is hostile, a court must consider the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 168.

Here, Mr. Payne complains only that he perceived that Mr. Mulhern was given preferable treatment in job assignments. Not only is this perception false, but it falls far short of the standard necessary to show a hostile work environment. Mr. Payne has not alleged any conduct

Latifah Riley, Investigator
PHILADELPHIA HUMAN RELATIONS COMMISSION
*Payne v. Prevention Point Philadelphia, Inc.*
PHRC Case No. 201801834
**January 27, 2020**
Page 10

that was directly related to his race.  He has not alleged any conduct that was "severe" or
"pervasive".  He has not alleged any conduct that would detrimentally affect a reasonable person
in Mr. Payne's position.  Instead, he was asked to perform tasks that fell squarely within the
parameters of his position as an intern.  While Mr. Payne may have been envious that Mr.
Mulhern was given other tasks, he obviously does not appreciate that Mr. Mulhern had been
associated with PPP for many months prior to the start of his internship.  As such, he was more
familiar with the operations and was able to perform more varied tasks.

    *c.*    ***Retaliation***

Mr. Payne also alleges that he was retaliated against for complaining about race
discrimination.  Pursuant to 43 P.S. § 955(d):

> It shall be an unlawful discriminatory practice…
>
> For any person, employer, employment agency or labor
> organization to discriminate in any manner against any individual
> because such individual has opposed any practice forbidden by this
> act, or because such individual has made a charge, testified or
> assisted, in any manner, in any investigation, proceeding or hearing
> under this act.[5]

The Third Circuit has held:

> To advance a prima facie case of retaliation under Title VII …, a
> plaintiff must show that: (1) the employee engaged in a protected
> employee activity; (2) the employer took an adverse employment
> action after or contemporaneous with the employee's protected
> activity; and (3) a causal link exists between the employee's
> protected activity and the employer's adverse action.

*Abramson v. William Paterson College. of N.J.*, 260 F.3d 265, 286 (3rd Cir. 2001).

Initially, while Mr. Payne did complain to Mr. Ruley about his perception of race
discrimination, such complaint was not protected under Title VII or the PHRA.  In *Moore v. City
of Philadelphia*, 461 F.3d 331, 341 (3rd Cir. 2006), the Third Circuit held, "Whether the
employee opposes, or participates in a proceeding against, the employer's activity, the employee
must hold an objectively reasonable belief, in good faith, that the activity they oppose is
unlawful under Title VII." *See also* Clark County v. Breeden, 532 U.S. 268, 271, 121 S.Ct.

---

[5] A similar prohibition exists under Title VII. *See* 42 U.S.C. § 2000e-(a).

Latifah Riley, Investigator
PHILADELPHIA HUMAN RELATIONS COMMISSION
*Payne v. Prevention Point Philadelphia, Inc.*
PHRC Case No. 201801834
**January 27, 2020**
**Page 11**

1508, 149 L.Ed.2d 509 (2001) (holding that "[n]o reasonable person could have believed that" the underlying incident complained about "violated Title VII's standard" for unlawful discrimination). Similarly, in *Wilkerson v. New Media Technology Charter School, Inc.,* 522 F.3d 315, 322 (3rd Cir.2008), the court held, "To put it differently, if no reasonable person could have believed that the underlying incident complained about constituted unlawful discrimination, then the complaint is not protected."

Here, while Mr. Payne may have held a *subjective* belief that he was being treated differently based on his race, that belief was not objectively reasonable. Mr. Payne does not allege that Ms. Laurano ever did anything that demonstrated an overt animus. To the contrary, Mr. Payne admitted in his journal that Mr. Laurano asked him to train a new intern – a task that displays trust and confidence in his knowledge of the subject matter. While Mr. Payne may have felt that Ms. Laurano assigned favorable tasks to Mr. Mulhern, such belief does not meet the standard necessary to show that Mr. Payne's complaint to Mr. Ruley was objectively reasonable under the circumstances. As such, Mr. Payne's claim fails at the first step.

Even if Mr. Payne could show that he made an objectively reasonable complaint of discrimination, the *McDonnell Douglas* analysis applies with equal strength to any claim of retaliation. *See e.g. Daniels v. School District of Philadelphia,* 776 F.3d 181, 193 (3rd Cir. 2015). As set forth above, Mr. Payne's concerning and troublesome notes created a legitimate, non-retaliatory basis for the decision to remove Mr. Payne from the internship.

**III.    Conclusion**

In light of the foregoing, as the decision to remove Mr. Payne from the internship was based on factors completely unrelated to Mr. Payne's race or complaints to Mr. Ruley, Mr. Payne cannot establish a claim for discrimination, harassment, or retaliation. As such, PPP respectfully requests that the Commission dismiss Mr. Payne's Charge with a finding of no probable cause.

If you have any questions, please do not hesitate to call me.

Respectfully yours,

DEASEY, MAHONEY & VALENTINI, LTD.

By: Rufus A. Jennings, Esquire

/st
Enclosures
cc:    Jose Benitez *(w/out enclosures) (via email)*
       Edward Haywood Payne, Jr. *(w/out enclosures) (via first-class mail)*